IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE CRUZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-cv-4873 |
| ) | |
| DENNIS CROSS, KENYON BAILEY, ) | Judge Robert M. Dow, Jr. |
| SANDRA GRIFFIN, and TROY DUNLAP, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On January 19, 2010, Plaintiff Jose Cruz filed a five count Second Amended Complaint against Defendants Dennis Cross, Kenyon Bailey, Sandra Griffin, and Troy Dunlap, four correctional officers at Stateville Correctional Center ("Stateville"). Plaintiff's claims arise out of an incident that occurred in October 2006 while Plaintiff was incarcerated at Stateville. Currently before the Court is Defendant Cross's motion to dismiss Counts III and IV of Plaintiff's Second Amended Complaint [31]. For the reasons set forth below, Defendant's motion to dismiss [31] is granted in part and denied in part.

**I.   Background**[1]

Plaintiff has been diagnosed with attention deficit disorder and has difficulty concentrating, is easily frustrated, and at times exhibits aggressive, violent, and suicidal tendencies. Plaintiff also has a history of depression and hyperactivity. As a result of those challenges, Plaintiff has been hospitalized approximately ten times and has been treated by various psychiatrists. Over the course of his life, Plaintiff has been prescribed various

---

[1] For the purposes of a defendant's motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

medications to help him control his emotions and behavior, including Ritalin, Valporic Acid, Elavil, Risperdal, Trazodone, Prozac, Depakote, Tegretol, Thorazine, Metylphenadite, Inderal LA, and Clonidine. According to Debbie Bruno, a clinician at Streamwood Residential Center in Elgin, Illinois, who treated Plaintiff in October 1999, "[h]is mood and behavior are drastically different when he complies with his medication."

Between late April and early May 2006, Plaintiff was imprisoned at Stateville. On May 19, 2006, Plaintiff was transferred to Dixon Correctional Center where the staff psychiatrists and mental health professionals prescribed and provided Plaintiff with a number of medications before settling on Depakote. In or around mid-September 2006, Plaintiff was transferred to Cook County Correctional Center ("Cook County") for further psychological evaluation. While he was incarcerated at Cook County, Plaintiff met with physicians and received his prescribed medication. On October 16, 2006, Cruz was transferred from Cook County back to Stateville and placed in a cell in the NRC building of the B-Unit. A Stateville physician prescribed Plaintiff Depakene on October 17, 2006.

On October 18, 2006, Defendant Cross, a correctional officer assigned to the NRC building of the B-Unit at Stateville, served Plaintiff lunch in his cell. Plaintiff had not yet received his medication, and asked Cross if he could see a prison psychiatrist or other medical staff to arrange to get the medication. Cross ignored Plaintiff's requests. Plaintiff then asked to speak with Cross's supervising lieutenant, a request that Cross also ignored. Cross returned to Plaintiff's cell after lunch to collect his lunch tray. At that time Plaintiff again asked to receive his medication and to see a psychiatrist. When Cross ignored Plaintiff's request, Plaintiff refused to surrender his lunch tray. After several demands for the return of the lunch tray, Cross verbally assaulted and threatened Plaintiff. Cross then entered Plaintiff's cell, where Plaintiff stood

2

passively holding his hands behind his back. Cross wrapped his handcuffs around his fists and began striking Plaintiff. Plaintiff used his hands and then his lunch tray to deflect the blows. Cross continued to beat Plaintiff, and Plaintiff screamed for help and hit Cross in the head with his lunch tray. Cross grabbed Plaintiff by the neck, choking him, and Plaintiff eventually dropped the lunch tray. When Cross released Plaintiff, Plaintiff tried to flee his cell. While Plaintiff and Cross were wrestling on the ground outside Plaintiff's cell, Bailey, Griffin, and Dunlap arrived on the scene and restrained Plaintiff by handcuffing him behind his back. After Plaintiff already had been restrained, Griffin sprayed Plaintiff in the eyes with pepper gas. Defendants then continued assaulting Plaintiff by repeatedly kicking him in the face and ribs.

Defendants finally dragged Plaintiff to a holding area where a tactical team arrived to record Plaintiff on video. With the tactical team present, Plaintiff was taken to a shower to wash off the chemicals from the pepper gas. Following the shower, Plaintiff was evaluated by the medical staff. After his visit with the medical staff, Plaintiff was placed on suicide watch and, later that day, was transferred to Pontiac Correctional Center.

Plaintiff filed the instant suit on August 26, 2008. On January 19, 2010, Cruz filed a five count Second Amended Complaint alleging (1) a Section 1983 claim against all Defendants for excessive force in violation of the Eighth and Fourteenth Amendments; (2) a Section 1983 claim against Cross for acting with deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment; (3) a state law claims assault and battery claim against all Defendants; (4) a state law negligence claim against Cross; and (5) a claim for fees and costs pursuant to 42 U.S.C. § 1988. Cross seeks dismissal of Counts III and IV on the grounds that Plaintiff's state law claims are barred by state sovereign immunity.

**II.     Legal Standard on Rule 12(b)(6) Motion to Dismiss**[2]

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). However, a Plaintiff need not include all essential facts in his complaint; rather, he may add them in an affidavit or brief in order to overcome a motion to dismiss as long as they are consistent with the initial allegations. *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001); *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) ("[F]acts alleged in a brief in opposition to a motion to dismiss * * * as well as factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint.").

"Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[2] Defendant submits that the Illinois Court of Claims has exclusive jurisdiction over Plaintiff's state law claims. At first blush, it may appear that Defendant should have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. However, the Seventh Circuit has explained that the doctrine of sovereign immunity is "non-jurisdictional," and "does not diminish a court's subject-matter jurisdiction." *Blagojevich v. Gates,* 519 F.3d 370, 371 (7th Cir. 2008). Therefore, Defendant properly moved to dismiss Plaintiff's state law claims pursuant to Rule 12(b)(6).

*Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618.

## III. Analysis

Defendant seeks dismissal of Counts III and IV on the ground that Plaintiff's state law tort claims are barred by state sovereign immunity. Under Illinois law, sovereign immunity is a statutory, rather than a constitutional, creature. The State Lawsuit Immunity Act provides that the State shall not be made a defendant in any Court except as provided in either the Public Labor Relations Act (not at issue here) or the Court of Claims Act. 745 ILCS 5/1. The Court of Claims Act vests exclusive jurisdiction in the Court of Claims in all actions "against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a). Thus, Illinois waives sovereign immunity only in the Court of Claims. *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)).

Under Illinois law, a claim against an individual will be considered a claim against the state, even when the individual is sued in his or her individual capacity, if "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." See *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992); *Feldman v. Ho*, 171 F.3d 494, 498 (7th Cir. 1999). The question for purposes of this Court's jurisdiction, therefore, becomes whether the action is "against the State." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990).

Determining whether an action against an individual is a suit against the state turns on the issues involved and the relief sought rather than the identity of the parties listed in the case caption. *In re Lawrence M.*, 670 N.E.2d 710, 527 (Ill. 1996). An action is against the state, and hence may be brought only in the Illinois Court of Claims, when:

> (1) [There are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the State employment; and (3) * * * the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004) (quoting *Healy*, 549 N.E.2d 1240)). With that standard in mind, the Court considers whether Plaintiff's state law claims are properly considered to be claims against the state.

### A. Count III – Assault and Battery

In Count III, Plaintiff alleges that Defendant Cross committed assault and battery in connection with the October 18, 2006 altercation. Applying the three-part test set forth above, the Court finds that Plaintiff's assault and battery claim is not against the state and thus is not barred by sovereign immunity.

With respect to the first prong, "[a]n employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the state's business." *Sellers v. Rudert*, 395 Ill.App.3d 1041, 1047 (Ill. Ct. App. 4th Dist. 2009). Illinois courts have held that a Plaintiff must "allege specific facts * * * indicating [that the defendants] committed the alleged acts for reasons other than what the defendants perceived to be in the best interests of the state agency." *Id.*; see also *Cortright v. Doyle*, 898 N.E.2d 1153, 1160 (Ill. Ct. App. 1st Dist. 2008) (finding that defendants' alleged conduct did not exceed the scope of their authority where plaintiff "failed to allege any specific facts in her complaint that showed the

6

supervisors harbored personal animosity toward her or acted for any purpose other than what they perceived to be the best interests of DCFS"). Here, Plaintiff alleges that Cross beat him using a weapon – handcuffs – and that Cross continued to beat Plaintiff even after he had been restrained. While the use of reasonable force to maintain or restore discipline is within the scope of a correctional officer's authority, the use of excessive force to cause harm is not. See *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (where plaintiff alleges excessive force by prison official, the proper inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). Nor is the Court inclined to assume that Cross perceived that continuing to beat Plaintiff after he was blinded by pepper spray and handcuffed, as Plaintiff alleges, was in the best interests of the IDOC. Therefore, with respect to Count III, the Court concludes that Cross's alleged conduct exceeded the scope of his authority and the first prong of the test indicates that Count III is not an action against the state.

Prong 2 also indicates that Plaintiff's assault and battery claim is not barred by state sovereign immunity. Claims for assault and battery do not technically require a breach of duty. Battery is the unauthorized touching of another person, *Luss v. Village of Forest Park*, 878 N.E.2d 1193, 1206 (Ill. App. Ct. 1st Dist. 2007), while assault is a reasonable apprehension of imminent battery, *Rosenberg v. Packerland Packing Co., Inc.*, 370 N.E.2d 1235, 1238 (Ill. App. Ct. 1st Dist. 1977). Thus, claims for assault and battery can be described as involving a duty not to threaten or engage in unauthorized touching of another person. To the extent that these claims involve a duty, it is a duty that all people owe to all other members of the general public. Consequently, any liability Cross may have for assault and battery arises independently of his State employment.

The third prong of the three part test is satisfied, as the complained-of action involves a matter frequently within a correctional employee's normal and official functions – namely, the use force to restore order and discipline. However, in light of the fact that the other two prongs are not satisfied, the Court concludes that Plaintiff's assault and battery claim is not barred by sovereign immunity.

B.    **Count IV – Negligence**

In Count IV, Plaintiff alleges that Defendant Cross negligently failed to provide Plaintiff medical care by ignoring Plaintiff's repeated requests for his medication. All three prongs of the three part test demonstrate that Plaintiff's negligence claim is a claim against the state. First, there are no allegations that Cross acted beyond the scope of his authority. "When the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful *manner*, but sticking his nose in business where it doesn't belong." *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009). Here, there is no dispute that it was within Cross's authority as a corrections officer to ensure that inmates receive adequate medical care. Plaintiff's allegations are directed at the manner in which Cross carried out that duty – or failed to carry out that duty, as the case may be. However, Plaintiff does not allege that Cross did something beyond the scope of his authority in ignoring Plaintiff's requests for his medication.

Second, the sole source of the duty Cross is alleged to have breached – to provide adequate medical care – is his state employment. Unlike a doctor, Cross is not subject to any independent duty of care outside that imposed on him by virtue of his state employment. See *Jinkins*, 807 N.E.2d at 419 (where defendants were mental health professionals, the source of their duty was their status as mental health professionals, not their state employment). Because Plaintiff's negligence claim alleges the breach of a duty that arose solely because of Cross's

status as a state correctional officer, it is barred by state sovereign immunity. See *Currie,* 592 N.E.2d at 980 ("[w]here the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court").

Third, the action complained-of in Count IV involves matters ordinarily within a correctional officer's normal and official state functions. In particular, Plaintiff complains about the manner in which Cross provided – or failed to provide – medical care. As noted above, part of a correctional officer's job it to ensure that inmates receive adequate medical care.

Plaintiff submits that, regardless of the outcome of the three part test, the "officer suit" exception to the doctrine of sovereign immunity applies, thereby saving his negligence claim from dismissal. See *PHL, Inc. v. Pullman Bank and Trust Co.*, 836 N.E.2d 351, 357 (Ill. 2005) (discussing "officer suit" exception to the doctrine of sovereign immunity). "The officer suit exception provides that when an officer of the State commits an unconstitutional act or violates a statute, the suit is not against the State, because the State is presumed not to violate its own constitution or enactments." *Turpin*, 567 F.3d at 884; see also *Nichol v. Stass*, 735 N.E.2d 582, 586 (Ill. 2000) (citation omitted) ("Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority").

Whether the exception for violations of constitutional law applies turns on whether the state law claims at issue are dependent on the alleged constitutional violation. Thus, in *Richman v. Sheahan*, 270 F.3d 430, 442 (7th Cir. 2001), the Seventh Circuit held that the plaintiff's state law wrongful death and survival claims were barred by sovereign immunity where the claims were "not dependent on the alleged constitutional violation, but instead on a theory of wilful and

wanton negligence." The mere fact that Plaintiff has alleged violations of his constitutional rights is not sufficient to avoid dismissal on sovereign immunity grounds. Indeed, in *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009), the court concluded that the plaintiff's state-law malicious prosecution claim was barred by sovereign immunity despite the fact that the plaintiff had "pleaded both state-law and constitutional claims" because "the former [were] not dependent on the latter."

Here, Plaintiff contends that his negligence claim depends on his Section 1983 deliberate indifference claim, and consequently is outside the protections of sovereign immunity. As Plaintiff notes, the two claims are based on the same factual allegations. However, the claims involve two separate theories of liability – namely, negligence and deliberate indifference rising to the level of a constitutional violation. Plaintiff can prevail on his negligence claim without demonstrating that Cross committed a constitutional violation. Therefore, like the state law claims that the Seventh Circuit found were barred by sovereign immunity in *Richman*, Plaintiff's negligence claim is "not dependent on the alleged constitutional violation, but instead on a theory of * * * negligence." 270 F.3d at 442. In light of the parallels to *Richman*, the Court must conclude that the officer suit exception does not apply, and that Plaintiff's negligence claim is barred by sovereign immunity.

A district court in this circuit recently reached the same conclusion in a case involving similar facts to the case at bar. In *Jones v. Hileman*, 2009 WL 249093 (S.D. Ill. Feb. 2, 2009), the plaintiffs brought suit against Illinois state police officers alleging, *inter alia*, a state law wrongful death claim and a Section 1983 claim for deliberate indifference to medical needs. The court concluded that the wrongful death claim did not depend on the constitutional claim, reasoning that, rather, the two claims offered "alternate theories of culpability, such that the

wanton negligence." The mere fact that Plaintiff has alleged violations of his constitutional rights is not sufficient to avoid dismissal on sovereign immunity grounds. Indeed, in *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009), the court concluded that the plaintiff's state-law malicious prosecution claim was barred by sovereign immunity despite the fact that the plaintiff had "pleaded both state-law and constitutional claims" because "the former [were] not dependent on the latter."

Here, Plaintiff contends that his negligence claim depends on his Section 1983 deliberate indifference claim, and consequently is outside the protections of sovereign immunity. As Plaintiff notes, the two claims are based on the same factual allegations. However, the claims involve two separate theories of liability – namely, negligence and deliberate indifference rising to the level of a constitutional violation. Plaintiff can prevail on his negligence claim without demonstrating that Cross committed a constitutional violation. Therefore, like the state law claims that the Seventh Circuit found were barred by sovereign immunity in *Richman*, Plaintiff's negligence claim is "not dependent on the alleged constitutional violation, but instead on a theory of * * * negligence." 270 F.3d at 442. In light of the parallels to *Richman*, the Court must conclude that the officer suit exception does not apply, and that Plaintiff's negligence claim is barred by sovereign immunity.

A district court in this circuit recently reached the same conclusion in a case involving similar facts to the case at bar. In *Jones v. Hileman*, 2009 WL 249093 (S.D. Ill. Feb. 2, 2009), the plaintiffs brought suit against Illinois state police officers alleging, *inter alia*, a state law wrongful death claim and a Section 1983 claim for deliberate indifference to medical needs. The court concluded that the wrongful death claim did not depend on the constitutional claim, reasoning that, rather, the two claims offered "alternate theories of culpability, such that the

wrongful death claim, as alleged, does not depend on any constitutional violation." 2009 WL 249093, at *4. Citing *Richman*, the court held that the doctrine of state sovereign immunity barred the plaintiffs' wrongful death claim. *Id.* Likewise, here, Plaintiff could prevail on Count IV without establishing deliberate indifference. For that reason, Count IV cannot be considered dependent on the alleged constitutional violation, and thus it is barred by state sovereign immunity.

**IV. Conclusion**

For the foregoing reasons, Defendant Cross's motion to dismiss Counts III and IV of Plaintiff's Second Amended Complaint [31] is granted in part and denied in part. In particular, the motion to dismiss is denied as to Count III and is granted as to Count IV.

Dated: September 10, 2010

_____
Robert M. Dow, Jr.
United States District Judge